### THE EASTERN GLADE.
### THE EL ISLEO.
#### Nos. 27, 28.

Circuit Court of Appeals, Second Circuit.
Jan. 9, 1939.

Barry, Wainwright, Thacher & Symmers, of New York City (Earle Farwell and John C. Crawley, both of New York City, of counsel), for appellant.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Burton H. White, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

On December 19, 1935, about 5:40 P. M., a collision occurred between the Eastern Glade, owned by Postal Steamship Corporation, and the El Isleo, owned by Southern Pacific Company. Each owner filed a libel against the vessel of the other. The libels were tried together and resulted in a finding that the Eastern Glade was solely at fault. A final decree of dismissal was entered in the suit brought by Postal Steamship Corporation, and an interlocutory decree for damages was awarded Southern Pacific Company in its suit. From both decrees Postal Steamship Corporation has appealed.

The collision occurred in the waters of Baltimore Harbor near the junction of Curtis Bay Channel with Fort McHenry Channel. The latter is about 600 feet wide and runs in a northwesterly direction toward Baltimore; the former, running nearly east and west, comes into Fort McHenry Channel from the west but does not cross it. The night was clear, the tide ebb, and a 15 mile breeze was blowing from the northwest. The steamship Eastern Glade, light, was bound out of Curtis Bay Channel and was intending to turn left into Fort McHenry Channel and proceed to Baltimore. The steamer El Isleo, laden with 1,000 tons of steel ore, also bound for Baltimore, was proceeding up Fort McHenry Channel at full speed—about eight miles through the water, as she was working only one boiler. When the vessels sighted each other they were more than a mile apart, the El Isleo being about four points on the starboard bow of the Eastern Glade. The latter stopped her engines and shortly thereafter sounded a two blast signal to indicate, as

her master says, that his course was to the left and up Fort McHenry Channel. El Isleo answered the two blast signal with an alarm followed by one blast, to indicate that she would keep her course and speed. Captain Korn of El Isleo testified that the Eastern Glade responded with four blasts followed by one, while her captain says she responded with three blasts to indicate that she was reversing her engines. El Isleo kept on until she reached a buoy just opposite Curtis Bay Channel, when, believing collision imminent, she put her rudder hard right and swung out of Fort McHenry Channel to her starboard. The Eastern Glade, although her master testified that he intended to hold back in Curtis Bay Channel until El Isleo had passed the junction, came clear across Fort McHenry Channel and brought her stem into contact with the port side of El Isleo about amidships. The place of collision was east of Fort McHenry Channel. The district court did not determine how far to the east, but McDonald testified it was about 200 yards.

The appellant no longer seeks exoneration of the Eastern Glade; it admits her fault in failing to remain in Curtis Bay Channel, as her master intended to do, until El Isleo had passed. But it contends that El Isleo was also blameworthy because she kept on at undiminished speed after sounding the danger signal, and because she had no local pilot in charge of her navigation.

■ Most of the argument has revolved about the question whether the vessels·were on crossing courses, as the district court held, or whether the situation was one of special circumstances, as the appellant contends. As this court has often said, a vessel's course for the purpose of determining her navigational duties with respect to another vessel is her apparent course, not her heading at a particular moment. The Hallgrim, 2 Cir., 20 F.2d 720, 721; Commonwealth & Dominion Line v. United States, 2 Cir., 20 F.2d 729, 731, modified on other grounds in 278 U.S. 427, 49 S.Ct. 183, 73 L. Ed. 439. It is not disputed that El Isleo's course up Fort McHenry Channel was always apparent to the Eastern Glade. But the latter's course was not immediately apparent to El Isleo; when the Eastern Glade should reach the end of Curtis Bay Channel, she might turn left, she might turn right, or she might conceivably, though improbably, cross Fort McHenry Channel, since there was water enough to the east of that channel, although neither pier, port nor anchorage to which she might be bound appears on the chart. When, however, she sounded her two blast signal, she indicated an intention either to cross the bows of El Isleo by proceeding across Fort McHenry Channel, or to turn to the left and proceed up that channel. The former alternative would clearly result in crossing courses; the latter would result in converging courses, since the Eastern Glade's course, if projected, would carry her into the starboard lane of Fort McHenry Channel, unless she violated her duty by going up on the wrong side. Such converging courses involve the very risk that resulted in the collision, and the rights and duties of the vessels are governed by Articles 19, 22 and 23 of the Inland Rules, 33 U.S.C.A. §§ 204, 207, 208. The Albano, [1907] A.C. 193, 205; see, also, the Boston Socony, 2 Cir., 63 F.2d 246. The cases relied upon by the appellant are not to the contrary, for they dealt with a situation where the vessel corresponding to the Eastern Glade made a turn to the right, resulting in "meeting" courses. The Arrow, 2 Cir., 214 F. 743; The R. J. Moran, 2 Cir., 299 F. 500. Accordingly, the district court was right in treating the situation as one of crossing courses.

■ So viewed no fault appears in the navigation of El Isleo, the privileged vessel. To the two blast signal of the Eastern Glade Captain Korn responded with an alarm followed by one blast to indicate his refusal to yield his right of way. In The Fulton, 2 Cir., 54 F.2d 467, we discussed the rule established in this circuit that in a crossing situation the privileged vessel may "cross" the signal of the burdened vessel and hold her course and speed until it becomes evident that the burdened vessel either cannot or will not keep out of the way. Although the rule was criticized, we thought it too firmly established to be departed from until the Supreme Court speaks. We still adhere to that view. The district court found that El Isleo was justified in holding her course and speed until she reached buoy 8 M, when she put her rudder hard right and ran to starboard out of the channel. The evidence amply supports this finding. Nor can her captain be charged with fault because in extremis he chose that chance of avoiding the collision instead of the chance of reversing his engines. The Nordpol, 2 Cir., 84 F.2d 3. We agree also with the finding that the proof of El Isleo's navigation overcame any

presumption of fault arising from the fact that her captain had no pilot's license for the local waters. The fault of the Eastern Glade was glaring and was alone sufficient to account for the disaster; hence any slight doubt as to the propriety of El Isleo's navigation should be resolved in her favor. The City of New York, 147 U.S. 72, 85, 13 S.Ct. 211, 37 L.Ed. 84.

Decrees affirmed.